

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GREGORY HUDSON, | ) |
| Petitioner, | ) 03 C 8699 |
| v. | ) Hon. Charles R. Norgle |
| ALAN UCHTMAN, | ) |
| Respondent. | ) |

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Before the court is Petitioner Gregory Hudson's Amended Petition for Writ of Habeas Corpus – Person in State Custody, filed pursuant to 28 U.S.C. § 2254. Petitioner challenges his conviction and sentence for the crime of Armed Violence. For the following reasons, the Petition is denied.

## I. BACKGROUND

Petitioner Gregory Hudson ("Hudson") is currently incarcerated at the Menard Correctional Center in Menard, Illinois, where he is serving a fifty year term of imprisonment. Hudson is in the custody of Respondent Alan Uchtman, the current warden of the Menard Correctional Center.

In July 1994, Hudson stood trial on two counts of murder in the Cook County Criminal Courts Building at 26th Street and California Avenue in Chicago, Illinois. Hudson could have received the death penalty had he been convicted, but he insisted on representing himself at trial. The Circuit Court appointed an Assistant Cook County Public Defender to act as standby counsel

1

for Hudson. Throughout the trial, Hudson asserted that he had been the victim of a conspiracy to frame him for the murders. After deliberating for ninety minutes, the jury found Hudson not guilty on both counts. Onlookers were astounded. "This could only be a miracle at 26th Street," said an amazed defense attorney. *Man Defends Himself in Murder Trial, Wins*, CHICAGO SUN TIMES, July 16, 1994, at 5.

Approximately sixteen months later, on November 2, 1995, Chicago Police Officers chased Hudson into an apartment building at 4432 West Jackson Boulevard. The Officers arrested Hudson, and recovered from him a loaded .38 caliber handgun, 167 tinfoil packets of heroin, 9 packets of cocaine, and $530 in cash. Hudson was charged with armed violence, possession of a controlled substance with intent to deliver, and unlawful possession of a weapon by a felon.

Hudson originally retained private counsel, but the Circuit Court in Cook County, Illinois, granted counsel's motion to withdraw on May 24, 1996. The court gave Hudson twenty-one days to retain a new attorney, but at Hudson's next status hearing he informed the judge that he wanted to represent himself. The court then informed Hudson of his rights under Illinois Supreme Court Rule 401 concerning waiver of counsel, the nature of the charges against him, and his potential sentence. Hudson again indicated that he wanted to represent himself. After considering a number of factors, including Hudson's background and education, his prior contact with the judicial system, and his prior acquittal of two murder charges after representing himself, the court determined that Hudson had knowingly, intelligently, and voluntarily waived his right to counsel. Hudson later moved the court to appoint standby counsel for him. The court denied the motion, but indicated that Hudson could have a public defender appointed to represent him.

2

At a January 3, 1997 hearing, the court reminded Hudson of the seriousness of the charges against him and the potential sentence, and inquired if Hudson wished to reconsider his waiver of counsel. Hudson replied that he understood the nature of the charges and the possible sentence, and again requested court-appointed standby counsel. The court denied Hudson's renewed request for standby counsel. Hudson then reaffirmed his desire to represent himself.

Unfortunately for Hudson, there would be no repeat of the "miracle at 26th Street." The jury convicted him of armed violence, a Class X felony in Illinois requiring a minimum fifteen year term of imprisonment.[1] Since Hudson had been convicted of another Class X felony within ten years of the instant offense, he became eligible for an extended prison term of thirty to sixty years under Illinois law. The court sentenced Hudson to fifty years imprisonment.

Hudson's case then slowly wound its way through the Illinois state court system. The Illinois Appellate Court affirmed Hudson's conviction and sentence on December 23, 1999. The Illinois Supreme Court denied Hudson's Petition for Leave to Appeal ("PLA") on May 31, 2000. The Circuit Court denied Hudson's first state post-conviction petition as frivolous and patently without merit on January 21, 2000. The Appellate Court affirmed on August 31, 2001. The Illinois Supreme Court denied Hudson's PLA on December 5, 2002. While his first post-conviction petition was still pending, Hudson filed a second. The Circuit Court again dismissed this petition as frivolous and patently without merit, and the Appellate Court affirmed in March 2003. The Appellate decision, however, was vacated by a supervisory order issued by the Illinois Supreme Court, which allowed Hudson to file a reply brief. After filing his reply brief, the Appellate Court affirmed the Circuit Court's dismissal again in December 2004, holding that

---

[1] The State proceeded to trial only on the armed violence charge.

3

Hudson's second post-conviction petition was a successive petition barred under Illinois law. Hudson did not file a PLA, but rather sought another supervisory order from the Illinois Supreme Court. The high court denied Hudson's request on March 5, 2005. In March 2001, while the appeal in his second post-conviction petition was pending, Hudson filed a third post-conviction petition. Hudson's third petition was merely a photocopy of his second petition. The Circuit Court summarily dismissed Hudson's third petition, and Hudson did not appeal. Respondent admits that Hudson has exhausted his state court remedies.

On December 1, 2003, Hudson filed a Petition for Writ of Habeas Corpus – Person in State Custody in the Northern District of Illinois. The district court dismissed this Petition without prejudice on May 14, 2004, because his appeal from the denial of his second state court post-conviction petition was still pending. The district court granted Hudson leave to refile his federal Petition within sixty days of the termination of his state court proceedings. Hudson timely filed the instant Amended Petition for Writ of Habeas Corpus – Person in State Custody on June 23, 2005. The Amended Petition is fully briefed and before the court.

## II. DISCUSSION

### A. Standard of Decision

Hudson's Petition is governed by 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which sets a high hurdle for habeas relief. The statute states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

4

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court's decision is *contrary to* clearly established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [it]." Owens v. Frank, 394 F.3d 490, 496 (7th Cir. 2005) (quoting Williams v. Taylor, 529 U.S. 362, 405 (2000)). A state court's decision is an *unreasonable application* of clearly established Supreme Court law if the state court "identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular prisoner's case" or "if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Williams, 529 U.S. at 407; see also Owens, 394 F.3d at 496. In order for a state court decision to be considered "unreasonable" under this standard it must be more than incorrect, it must lie "well outside the boundaries of permissible differences of opinion." Hardaway v. Young, 302 F.3d 757, 762 (7th Cir. 2002); see also Schultz v. Page, 313 F.3d 1010, 1015 (7th Cir. 2002) ("The state court decision is reasonable if it is minimally consistent with the facts and circumstances of the case").

Before reviewing the Illinois courts' decisions, however, the court must determine whether Hudson fairly presented his federal claims to the state courts. Section 2254 requires a

5

habeas petitioner to exhaust the remedies available in state court prior to pursuing federal habeas relief. See 28 U.S.C. § 2254(b)(1)(A). Any claim not presented to the state's highest court is deemed procedurally defaulted. See O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999) (indicating that "a petition for discretionary review in Illinois' Supreme Court is a normal, simple, and established part of the State's appellate review process").

In addition to exhausting the remedies available in state court, a habeas petitioner is procedurally barred from raising claims in a federal habeas court that he did not raise in the state court proceedings. See O'Sullivan, 526 U.S. at 848 (holding that a petitioner's failure to present three claims to the Illinois Supreme Court for discretionary review resulted in a procedural default of those claims). Fair presentment of a constitutional claim requires a habeas petitioner to present both the operative facts and the controlling legal principles to the state court before bringing the claims to a federal habeas court. Cf. Rodriguez v. Scillia, 193 F.3d 913, 916 (7th Cir. 1999) (discussing exhaustion of claim) (citing Picard v. Connor, 404 U.S. 270, 277 (1971)). Thus, a habeas petitioner procedurally defaults, or waives, any claim raised for the first time in federal court.

Also, federal habeas courts cannot review claims that the state court has disposed of on state law grounds. See Stewart v. Smith, 536 U.S. 846, 860 (2002); see also Lambrix v. Singletary, 520 U.S. 518, 523-24 (1997) (noting that where "the state law determination is sufficient to sustain the decree, any opinion . . . on the federal question would be purely advisory.") (citing Herb v. Pitcairn, 324 U.S. 117, 125-26 (1945)). Put another way, federal habeas relief is not available if the state court decision rests on state law that "is independent of the federal question and adequate to support the judgment." See Coleman v. Thompson, 501

U.S. 722, 729 (1991). For example, waiver under state law is an independent and adequate state law ground for dismissal that can preclude federal habeas relief. Thus, when a state court determines that a habeas petitioner waives a claim in state court, that waiver is an independent and adequate state law determination that bars federal habeas relief. See Harris v. Reed, 489 U.S. 255, 258 (1989) (citing Wainwright v. Sykes, 433 U.S. 72, 86-87 (1977)); see also Wright v. Walls, 288 F.3d 937, 947 (7th Cir. 2002) (waiver is an independent and adequate state ground in Illinois); Patrasso v. Nelson, 121 F.3d 297, 301-02 (7th Cir. 1997) (comparing waiver and res judicata under Illinois law, and the consequences of each on subsequent federal habeas review). However, for waiver to bar federal habeas review, the last state court to consider the question must have "actually relied on procedural default as the basis for its decision." Braun v. Powell, 227 F.3d 908, 912 (7th Cir. 2000). If that is not so, the merits of the issue are preserved for federal habeas review. See id.

A federal court may not grant habeas relief on a defaulted claim unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice. See Edwards v. Carpenter, 529 U.S. 446, 450-52 (2000); Coleman, 501 U.S. at 750; Anderson v. Cowen, 227 F.3d 893, 899 (7th Cir. 2000). With the above principles in mind, the court examines Hudson's Petition.

## B. Hudson's Claims for Relief under § 2254

Hudson makes the following claims in his Amended Petition. (1) The trial court unconstitutionally prohibited him from presenting certain evidence. (2) The trial court displayed bias against him by making prejudicial statements to the jury and altering trial transcripts. (3)

7

His appellate attorney was constitutionally ineffective. (4) The Illinois state court system failed to provide him with a meaningful review of his claims.

In his original Petition, Hudson asserted that he was unconstitutionally deprived of the services of standby counsel at trial. Hudson failed to include this claim in his Amended Petition, and it is therefore forfeited. This court, in a May 20, 2005 Minute Order, reminded Hudson in boldface of the consequences of filing an amended Petition. See Kelley v. Crosfield Catalysts, 135 F.3d 1202, 1204-05 (7th Cir. 1998) (an amended pleading generally supercedes an original pleading). Nevertheless, with an abundance of caution, the court will address the merits of this claim.

### *1. Loss of Opportunity to Present Certain Evidence*

Hudson first argues that his constitutional rights were violated when the trial court precluded him from cross-examining state's witnesses regarding various matters, and refused to allow him to introduce certain other evidence. Hudson first brought his evidentiary claims in his first state post-conviction petition. The state trial court denied these claims because Hudson failed to raise them on direct appeal. On appeal from the denial of his first post-conviction petition, Hudson did not raise these claims. In his second post-conviction petition, Hudson again raised these claims, but the trial court summarily dismissed this petition, and the appellate court affirmed, holding that the second petition was an improper successive petition under Illinois law. This court therefore determines that these claims are procedurally barred, as the Illinois courts have disposed of these claims on independent and adequate state law grounds. See Wright, 288 F.3d at 947 (holding that waiver is an independent and adequate state law ground in Illinois).

Hudson has not shown cause or actual prejudice to overcome this procedural default. See Edwards, 529 U.S. at 450-52.

The court notes that the question of whether the introduction of this evidence was proper under Illinois law is not cognizable in a federal habeas petition. It is well-established that "'federal habeas corpus relief does not lie for errors of state law.'" Estelle v. McGuire, 502 U.S. 62, 67 (1991) (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990)); Escobar v. O'Leary, 943 F.2d 711, 720 (7th Cir. 1991) ("Violations of state evidentiary rules may not be questioned in a federal habeas proceeding unless they render the trial so fundamentally unfair as to constitute a denial of federal constitutional rights."). To the extent that Hudson may be challenging the state court's interpretation of Illinois evidentiary law, this claim is therefore meritless. Hudson's first claim for relief under § 2254 is denied.

### 2. Trial Court Bias

Hudson next claims that the trial court made "extremely prejudicial statements" against him in front of the jury during trial, and, during post-conviction proceedings, removed these statements from the record. Am'd Pet., at 5. Hudson failed to raise this issue on direct appeal, but he then raised it in his first post-conviction proceeding. The Appellate Court that examined Hudson's first post-conviction petition found that, based on state law grounds, Hudson had forfeited this issue. This court therefore determines that Hudson's trial court bias claims are procedurally barred on habeas review. See Wright, 288 F.3d at 947 (holding that waiver is an independent and adequate state law ground in Illinois). Hudson has not shown cause or actual prejudice to overcome this procedural default. See Edwards, 529 U.S. at 450-52.

9

In addition, Hudson has not specifically identified any of the "extremely prejudicial statements" the trial court allegedly made or concealed. The court will not engage in speculation as to which particular statements Hudson objects. See FTC v. World Media Brokers, 415 F.3d 758, 766 (7th Cir. 2005). Even if the court were to determine that this issue was not procedurally defaulted, the court would not consider the merits of this argument. Hudson's second claim for relief under § 2254 is denied.

### 3. Ineffective Assistance of Appellate Counsel

Hudson's third claim in support of his § 2254 Petition is that his counsel on direct appeal was constitutionally ineffective for failing to raise certain issues. In order to establish that his counsel was ineffective, Hudson must "show that [his] counsel's performance was deficient, and that the deficiency prejudiced [his] defense." See Wiggins v. Smith, 539 U.S. 510, 521 (2003) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). An attorney's performance is deficient if it falls "below an objective standard of reasonableness." Wiggins, 539 U.S. at 521 (quoting Strickland, 466 U.S. at 688). Prejudice is established by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Benefiel v. Davis, 357 F.3d 655, 662 (7th Cir. 2004) (quoting Strickland, 466 U.S. at 694). An ineffective assistance of counsel claim may be brought in a § 2254 motion, regardless of whether the claim was raised on appeal. See Massaro v. United States, 538 U.S. 500, 504 (2003).

When a court reviews an ineffective assistance of counsel claim, the court's review is "highly deferential" to the attorney, "with the underlying assumption that 'counsel's conduct falls within the wide range of reasonable professional assistance.'" United States v. Holman, 314

F.3d 837, 840 (7th Cir. 2002) (quoting Strickland, 466 U.S. at 689). There is therefore a strong presumption that Hudson's attorney performed reasonably. See Strickland, 466 U.S. at 690; see also Cooper v. United States, 378 F.3d 638, 641 (7th Cir. 2004). To succeed in his claim, Hudson must show "errors so serious that counsel was not functioning as 'counsel' guaranteed [to him] by the Sixth Amendment . . . ." See Holman, 314 F.3d at 839 (quoting Strickland, 466 U.S. at 687).

"The Sixth Amendment right of effective assistance of counsel applies to a criminal defendant's trial, sentencing, and the first appeal of right." Jones v. Welborn, 877 F. Supp. 1214, 1219 (S.D. Ill. 1994) (citing Pennsylvania v. Finley, 481 U.S. 551 (1987)). The familiar Strickland standard therefore applies to defense counsel's performance both at trial, and on direct appeal. See Lee v. Davis, 328 F.3d 896, 900 (7th Cir. 2003); Winters v. Miller, 274 F.3d 1161, 1167 (7th Cir. 2001). Appellate counsel's performance is objectively unreasonable "if counsel fails to appeal an issue that is both obvious and clearly stronger than the one that was raised." Winters, 274 F.3d at 1167. Prejudice is established where failing to raise such an issue "'may have resulted in a reversal of the conviction, or an order for a new trial.'" Id. (quoting Mason v. Hanks, 97 F.3d 887, 893 (7th Cir. 1996)); see also Lee, 328 F.3d at 900.

Hudson raised the following issues on direct appeal: whether he was denied a fair trial when the trial court did not allow him standby counsel; whether at sentencing the trial court improperly determined that his offense threatened serious physical harm; and whether the trial court failed to consider his rehabilitative potential at sentencing. People v. Hudson, No. 95 CR 33003, slip op. at 1 (Ill. App. Ct. 1999). Hudson now asserts that counsel should have raised these issues: the alleged omission of the Motion for New Trial from the appellate record; whether

11

his sentence was unconstitutionally enhanced; actual innocence; and whether the State proved all the elements of the crime for which he was convicted. Appellate counsel's performance was objectively unreasonable in this case only if counsel failed to raise issues that were "both obvious and clearly stronger than the one[s] that [were] raised." Winters, 274 F.3d at 1167. After examining the record in this case, the court cannot determine that the issues counsel did not raise were obviously and clearly stronger that the issues counsel did raise. See id. Hudson's third claim for relief under § 2254 is therefore denied.

### *4. No Meaningful State Court Review of Hudson's Claims*

In his final claim, Hudson simply repeats and elaborates upon many of the arguments and assertions he made at earlier stages of this protracted litigation. He then opines that because the Illinois state court system provided him with no relief, his claims must not have been meaningfully reviewed. The record indicates that the Illinois state court system afforded Hudson the following opportunities to present his case: a jury trial in which he was repeatedly offered appointed counsel, a direct appeal to the Illinois Appellate Court which issued a detailed eleven page opinion affirming his conviction and sentence in this relatively simple case, a PLA to the Illinois Supreme Court on direct appeal, three separate post-conviction petitions, two of which he appealed to the Illinois Appellate Court, and one PLA to the Illinois Supreme Court regarding a post-conviction petition. In addition, Hudson was afforded the opportunity to file a reply brief in one of his post-trial conviction proceedings after the Illinois Supreme Court vacated an Appellate Court opinion. There is no serious argument to be made that Hudson's case has not been afforded meaningful state court review. At any rate, the State has already conceded that Hudson

12

has exhausted his state court remedies. Hudson has therefore already met the threshold requirement for filing a § 2254 Petition. See 28 U.S.C. § 2254 (b).

## 5. *Denial of Standby Counsel*

As the court has noted, Hudson's original § 2254 Petition contains the claim that he was unconstitutionally denied the services of standby counsel when he represented himself at trial. It is well established that criminal defendants have a Constitutional right to defend themselves. "And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of that respect for the individual which is the lifeblood of the law." Faretta v. California, 422 U.S. 806, 834 (1975) (internal quotation marks and citations omitted). However, there is no Constitutional right to "hybrid representation" in which a defendant acts as co-counsel alongside an attorney. "We recognize, along with all other circuits that have considered the question, that there is no Sixth Amendment right to hybrid representation; rather, whether a defendant may act as co-counsel along with his own attorney, is a matter within the sound discretion of the district court." United States v. Chavin, 316 F.3d 666, 671 (7th Cir. 2002).

The trial court in this case, in its discretion, denied Hudson's request for standby counsel. The Illinois Appellate court affirmed the trial court's decision to deny Hudson hybrid representation, citing applicable federal and Illinois law. Hudson, slip op. at 3-4. This court can find no indication in the record that the state Courts' decisions were based on an unreasonable application of the federal law, or on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d). Hudson's final claim for federal habeas corpus relief is therefore denied.

## III. CONCLUSION

For the foregoing reasons, Hudson's Amended Petition for Writ of Habeas Corpus – Person in State Custody, filed pursuant to 28 U.S.C. § 2254 is denied.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

Dated: September 9, 2008